IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY *bmw* D.C.

05 NOV -8 PM 5:04

THOMAS M. GOULD
CLERK, US DISTRICT COURT
W/D OF TN, MEMPHIS

PAMELA ANN DOTSON,                )
                                  )
    Plaintiff,                    )
                                  )
v.                                )
                                  )    No. 03-2876 Ma/P
AT&T WIRELESS,                    )
                                  )
    Defendant.                    )
                                  )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant AT&T Wireless' motion for summary judgment filed on July 15, 2005. Plaintiff Pamela Ann Dotson ("Dotson") filed a response on August 18, 2005. On September 13, 2005, AT&T Wireless filed a reply to Dotson's response. For the following reasons, Defendant's motion for summary judgment is GRANTED.

**I. Background**

Dotson is an African-American woman who was hired as a salesperson for SunCom in April 2000. (Pl.'s Mem. Opp'n Summ. J. 1.) In September 2001, Dotson had surgery to remove her gall bladder. (Id. at 2.) Complications from that surgery caused Dotson to require emergency surgery two weeks later. (Id.) As a result of these surgeries, Dotson took several months of leave under the Family Medical Leave Act ("FMLA") during which time she

1

received short-term disability benefits. (Def.'s Mem. Supp. Summ. J. 3.) She returned to work on January 7, 2002 with no medical restrictions. (Id.)

Dotson continued at her job until September 2002, although she continued experiencing severe, chronic pain in her back and abdomen. (Pl.'s Mem. 2.) Because of this pain, Dotson occasionally left the store showroom to sit down, prop up her feet, or lie down on chairs. (Id. at 3.) In September 2002, Dotson was promoted to the position of lead communication specialist. (Def.'s Mem. 1-2.) This position was similar to that of salesperson, but in addition to her previous duties, Dotson was given responsibility for opening or closing the store where she worked. (Pl.'s Mem. 2.)

Around that time, Dotson returned to her surgeon, Dr. Santiago Vera, because the pain was becoming so intense. (Id. at 3.) In September 2002, Dotson was referred to an orthopedic specialty clinic for further treatment and was placed under the care of Dr. David Dowling. (Id.) Beginning in September 2002, Dotson again took FMLA leave and received short-term disability benefits. (Def.'s Mem. 3.)

Dr. Dowling released Dotson to return to work on December 13, 2002. (Pl.'s Mem. 3.) In his release, Dr. Dowling noted that Dotson should be able to work in a job that required standing but "allows her to change positions, intermittently sit or prop her

2

feet up on a stool..." (Pl.'s Dep. Ex. 5, June 27, 2005.) Plaintiff was not, however, allowed to return to work at this time. (Pl.'s Mem. 9.) In January 2003, Dotson began to receive treatment from another doctor, Dr. Peter Lindy, who placed restrictions on Dotson's ability to return to work. (Pl.'s Mem. 5.) In Dr. Lindy's opinion, Dotson should not lift more than three pounds and should not stand or walk for more than fifteen to twenty minutes at a time or for more than two hours a day. (Pl.'s Dep. Ex. 8.) In the spring of 2003, Dotson was given twelve weeks with pay to perform an in-house job search for a position compatible with her medical restrictions. She was unable to find a suitable position. (Id. at 4-5.)

In May 2003, Dotson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was denied a reasonable accommodation for her disability as required under the Americans With Disabilities Act ("ADA"). (Pl.'s Mem. 5.) Dotson was terminated on August 16, 2003. (Def.'s Mem. 5.) The present action was filed on November 21, 2003.[1] The complaint alleges employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII") and the ADA, 42 U.S.C. § 12101 et seq. (Am. Compl. ¶ 1.) Dotson also alleges that she was

---

[1] There were initially seventeen defendants. All defendants except AT&T Wireless were dismissed on March 17, 2004.

3

terminated in retaliation for filing a charge of discrimination with the EEOC. (Id. ¶ 32.)

**II. Jurisdiction**

The court has jurisdiction to adjudicate federal claims under 28 U.S.C. § 1331.

**III. Standard for Summary Judgment**

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some

4

metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." <u>Cloverdale Equip. Co. v. Simon Aerials, Inc.</u>, 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. <u>See</u> <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. <u>See id.</u>

## IV. Analysis

In its motion for summary judgment, AT&T Wireless contends that Dotson has not established a prima facie case of employment discrimination under either the ADA or Title VII and cannot show that there is any genuine issue of material fact as to her claim of retaliation. Defendant also claims that Dotson is not entitled to back pay or, in the alternative, that any award of back pay should be limited to the amount Dotson would have earned as of June 27, 2005. Because AT&T Wireless' motion for summary judgment is granted as to all counts, the court need not reach the arguments about Dotson's entitlement to back pay.

5

### A. Disability Discrimination

To make out a prima facie claim for unlawful discrimination under the ADA, a plaintiff must show that: 1) she is an individual with a disability, 2) she is "otherwise qualified" to perform the requirements of the job, with or without reasonable accommodation, and 3) she was terminated solely because of her disability. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996). A disability is defined as a "physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 29 C.F.R. § 1630.2(g)(1) (2005). A condition that significantly limits an individual's ability to walk for the same duration as an average person in the general population meets the definition of disability. 29 C.F.R. § 1630.2(i), (j)(1)(ii). A person whose ability to work in "either a class of jobs or a broad range of jobs in various classes" is significantly restricted in comparison with the average person of comparable training, skills, and abilities is also considered to be disabled. 29 C.F.R. § 1630.2(j)(3)(i).

Taking the facts in the light most favorable to her, Dotson has satisfied the first element of her prima facie case. According to Dr. Lindy's January 31, 2003, report, Dotson was not able to stand or walk for more than fifteen to twenty minutes at a time or for more than two hours a day. (Pl.'s Dep. Exs. 7-8.) This inability is a significant limitation on Dotson's ability to

6

walk compared to that of an average person. It also significantly limits Dotson's ability to work in a broad range of jobs for which she would be otherwise qualified. Dotson has also satisfied the third element of her prima facie case. The letter from AT&T Wireless terminating Dotson's employment indicates that the sole reason for Dotson's termination is her medical condition. (Pl.'s Dep. Ex. 14.)

The primary dispute between the parties is about the second element of Dotson's prima facie case. Dotson asserts that she could have performed the requirements of her job with the reasonable accommodation of a chair or stool on the sales floor so that she would not have to stand for long periods of time. AT&T Wireless argues, however, that Dotson's medical condition prevented her from being able to perform the essential functions of her job even with a reasonable accommodation and that, alternatively, it could not have provided any accommodation to Dotson to allow her to perform her job because she did not request such an accommodation.

A disabled person is considered qualified if she "satisfies the requisite skill, experience, education and other job-related requirements of the employment position..." 29 C.F.R. § 1630.2(m). The person must also be able to perform the essential functions of the job, with or without accommodation. Id. Essential functions are fundamental job duties, not marginal

7

functions of a position. 29 C.F.R. § 1630.2(n)(1). An employer is legally required "to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified... employee..." 29 C.F.R. § 1630.9(a). The initial burden of requesting such accommodations, however, lies with the employee. <u>Gantt v. Wilson Sporting Goods Co.</u>, 143 F.3d 1042, 1047 (6th Cir. 1998). "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." <u>Id.</u> at 1046-47.

Dotson argues in her brief that she told AT&T Wireless' benefits provider that she could return to work if she received a reasonable accommodation and was then informed by Gail Kairit in AT&T Wireless' Human Resources Department that it could not accommodate her request because the job required being able to stand over 75 percent of the time. The only evidence to support this argument is Dotson's own testimony at her deposition in which she herself states that her memory about what happened in December 2002 is poor. (Pl.'s Dep. 84:6-85:14.) Dotson further testifies that she "may have faxed [Kairit] a note...letting her know that...an accommodation was necessary." (Id. 120:12-15.) Dotson provides no written documentation of any request for an accommodation or any denial of that request.

Furthermore, although Dotson claims the only reasonable accommodation that she required was a chair on the sales floor,

8

she also admits that, even in December, her doctor probably told the company that she was released to work only intermittently. (Id. 84:22-25.) "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." Tyndall v. Nat'l Educ. Ctrs. Inc., 31 F.3d 209, 213 (4th Cir. 1994), *cited with approval in* Gantt, 143 F.3d at 1047. The evidence presented indicates that neither SunCom nor AT&T Wireless employed part-time workers. (White Dep. 88: 17-18.) Additionally, there is no evidence to show that any employee of AT&T Wireless ever requested or was allowed to work less than full-time. (Id. 88:14-22.) Even assuming that Dotson requested the reasonable accommodation of a chair on the sales floor, she could not show that she is "otherwise qualified" to perform the work, with a reasonable accommodation, because the evidence, taken in the light most favorable to her, shows that Dotson was only able to commit to returning to work intermittently in December 2002.

Because the evidence does not establish that Dotson was "otherwise qualified" for the position of lead communication specialist, because of the lack of evidence that she requested a reasonable accommodation, and because she would only have been able to return to work on an intermittent basis, she cannot make out a prima facie case for discrimination under the ADA. Defendant's motion for summary judgment as to this claim is, therefore, granted.

9

## B. Racial Discrimination

The initial burden of establishing a prima facie case of racial discrimination under Title VII lies with the plaintiff. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To carry her burden in this case, Dotson must show that: (1) she is a member of a protected class, (2) she was subject to an adverse employment action, (3) she was qualified for her position, and (4) she was treated differently from employees outside the protected class for the same or similar conduct. Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 561 (6th Cir. 2004). When a plaintiff produces evidence to establish a prima facie case, the burden shifts to the employer to put forth a legitimate, nondiscriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802. Once an employer has offered such a reason, the plaintiff must show that this reason is merely a pretext. Id. at 805.

For purposes of its motion for summary judgment, AT&T Wireless does not dispute that Dotson satisfies the first three elements of her prima facie case for racial discrimination. To satisfy the fourth element, a plaintiff must show that employees outside the protected class who were treated differently were "similarly-situated *in all respects*." Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992)(emphasis in original). This requirement does not mean that the plaintiff must

"demonstrate an exact correlation with the employee receiving more favorable treatment," but only that they are "similar in 'all of the *relevant* aspects.'" Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)(quoting Pierce v. Commonwealth Life Ins., 40 F.3d 796, 802 (6th Cir. 1994)(emphasis added in Ercegovich).

The evidence shows that three other employees of AT&T Wireless who had medical conditions that restricted their ability to stand for long periods of time were allowed chairs on the sales floor. (White Dep. 69:5-23, June 28, 2005.) Two of those employees were apparently white, and one was African-American.[2] (Id. 72:11-13, 84:17-18.) Plaintiff asserts that the white employees were similarly-situated to Dotson because their requests for accommodation went through the same HR department, all were sales representatives, and the requested accommodation was the same for all of them.

There is no evidence, however, to show that the medical restrictions placed on the other employees were as severe as those placed on Dotson. Requiring a chair on the sales floor to sit occasionally is not the same as being able to stand or walk for only fifteen to twenty minutes at a time and for a total of two hours a day. There also is no evidence that the other

---

[2] There is nothing in the White deposition, the only source of evidence on this issue, about the race of one of the three employees, Eric Goelitz, but both sides apparently agree that he is white.

11

employees were able to work only intermittently, which would require accommodations beyond allowing the use of a chair on the sales floor.

Without any additional evidence as to the extent of the other employees' disabilities, Dotson cannot show that those employees were similarly-situated in all relevant respects and, therefore, cannot satisfy the final element of her prima facie case of racial discrimination. Defendant's motion for summary judgment as to Dotson's claim of employment discrimination based on race is granted.

### C. Retaliation

To make out a claim for retaliation under the ADA, a plaintiff must show that: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. Sullivan v. River Valley Sch. Dist., 197 F.3d 804, 814 (6th Cir. 1999). Once a plaintiff establishes her prima facie case, the burden shifts to the employer to put forth a legitimate, nondiscriminatory reason for its action. Penny v. United Parcel Serv., 128 F.3d 408, 417 (6th Cir. 1997). The plaintiff then must show that this reason is merely a pretext. Id.

It is undisputed that Dotson has satisfied the first two elements of her prima facie case. In some cases, the temporal

proximity of events has been an important factor in establishing a causal connection. Singfield, 389 F.3d at 563. Temporal proximity on its own, however, is not sufficient to establish that connection. Nguyen v. City of Cleveland, 229 F.3d 559, 566 (6th Cir. 2000). Rather, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." Id. at 563.

The only evidence Dotson can cite to show a causal connection between her official termination from AT&T Wireless and the charge of discrimination she filed with the EEOC is that she was fired slightly less than three months after filing the charge. That timing alone is insufficient to establish a causal connection.

Plaintiff further argues, however, that the timing takes on greater importance in this case because, although she had not been at work since September 2002, she was not officially terminated until after the EEOC charge had been filed. This argument ignores the fact that, as mentioned in her termination letter, the twelve weeks with pay that AT&T Wireless had allowed Dotson to conduct her internal job search ended on the day before her effective termination date. (Pl.'s Dep. Ex. 14.) Thus, her termination is far closer to the expiration of her job search period than to the filing of her EEOC complaint three months

13

before, indicating that the temporal proximity of Dotson's termination and the filing of her EEOC complaint does not take on such great significance in this case as to be decisive. Furthermore, that Dotson had not been at work since September 2002 indicates that her termination was inevitable regardless of her decision to file a complaint with the EEOC.

The evidence, even taken in the light most favorable to Dotson, does not establish the necessary causal connection to establish a prima facie case of retaliation. Because Dotson cannot make out a prima facie case of retaliation for filing a charge of discrimination with the EEOC, Defendant's motion for summary judgment as to this claim is granted.

## V. Conclusion

Defendant's motion for summary judgment as to all counts is GRANTED.

So ordered this **8th** day of November 2005.

_____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

14

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 47 in case 2:03-CV-02876 was distributed by fax, mail, or direct printing on November 8, 2005 to the parties listed.

---

Susan L. Ratner
MEMPHIS AREA LEGAL SERVICES, INC.
109 N. Main Street
Ste. 201
Memphis, TN 38103

Webb A. Brewer
MEMPHIS AREA LEGAL SERVICES, INC.
109 N. Main Street
Ste. 201
Memphis, TN 38103

Karyn C. Bryant
BOULT CUMMINGS CONNERS & BERRY
1600 Division Street
Ste. 700
Nashville, TN 37203--002

Pamela Ann Dotson
5968 Cheryl Crest Lane
Memphis, TN 38115

Luther Wright
BOULT CUMMINGS CONNERS & BERRY
1600 Division Street
Ste. 700
Nashville, TN 37203--002

Honorable Samuel Mays
US DISTRICT COURT